IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CHRISTOPHER MUTTERSBAUGH,      )
                               )
        Plaintiff,             )
                               )        CIVIL ACTION NO.
        v.                     )         2:17cv746-MHT
                               )            (WO)
HYUNDAI MOTOR                  )
MANUFACTURING OF ALABAMA,      )
LLC,                           )
                               )
        Defendant.             )

OPINION AND ORDER

Plaintiff Christopher Muttersbaugh brought this lawsuit pursuant to the Americans with Disabilities Act, as amended (ADA), 42 U.S.C. § 12101 *et seq.*, against his former employer, defendant Hyundai Motor Manufacturing of Alabama, LLC. Muttersbaugh asserts five claims: (1) failure to accommodate, (2) retaliatory failure to promote, (3) retaliatory termination, (4) general retaliation, and (5) discriminatory termination. Pending before the court is Hyundai's motion for summary judgment on all of Muttersbaugh's claims. The magistrate judge recommends

granting summary judgment on all claims. After reviewing the record and holding oral argument on the magistrate judge's recommendation, the court concludes, as follows, that the motion should be granted as to all claims except the failure-to-accommodate claim, which will go to trial:

(1) *Failure to Accommodate*: The magistrate judge inappropriately recommends summary judgment on this claim. He concluded the claim was untimely, and that, even if timely, it would not survive summary judgment because Muttersbaugh was not denied an accommodation. For the reasons discussed below, the court finds that there is a factual dispute as to whether the claim is time-barred. Furthermore, there are disputes of material fact, precluding summary judgment, as to when Muttersbaugh's supervisor prevented him from eating and whether any accommodation Muttersbaugh was provided with was effective.

(2) *Retaliatory Failure to Promote*: The magistrate judge inappropriately applied the *discriminatory*

failure-to-promote test, rather than the *retaliatory* one. Applying the retaliatory failure-to-promote test, this claim should not survive summary judgment because Muttersbaugh showed no evidence, beyond impermissible hearsay statements, that raise a specter of retaliation.

(3) *Retaliatory Termination*: The magistrate judge properly concluded that summary judgment was appropriate on this claim because Muttersbaugh failed to show sufficient pretext to rebut Hyundai's legitimate, non-retaliatory reason for firing him.

(4) *Claim of Other Assertions of Retaliation*: The magistrate judge properly concluded that this claim is time-barred.

(5) *Discriminatory Termination*: The magistrate judge properly concluded that summary judgment was appropriate on this claim because Muttersbaugh failed to show sufficient pretext to rebut Hyundai's legitimate, non-discriminatory reason for firing him.

## I.  SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. FACTUAL BACKGROUND

The alleged facts viewed in favor of Muttersbaugh are as follows.

Muttersbaugh worked as a Warranty Reclaim Specialist at Hyundai from May 2010 to February 2013, when he was terminated.  His position required him to

review warranty claims and handle payments or charge backs to Hyundai suppliers. His direct supervisor was Jennifer Bayless, and her supervisor was Mark Rylatt.

*Muttersbaugh requested reasonable accommodations for type 1 diabetes.* Muttersbaugh has type 1 diabetes and needs to eat throughout the day to maintain his blood-sugar levels. If he experiences low or high blood-sugar events, the impact can range from momentary weakness to loss of consciousness. In order to manage his diabetes in the workplace, he requested reasonable accommodations from his supervisors Bayless and Rylatt shortly after he was hired. Specifically, he requested being allowed to eat meals and snacks on a routine basis, working consistent hours (including having a consistent start time) and taking time off for diabetes-related doctors' appointments and diabetic episodes.

*Throughout Muttersbaugh's employment, supervisor Rylatt prevented him from using his reasonable accommodations and made fun of his disability.* For

example, in 2010, Muttersbaugh had a severe insulin reaction in Hyundai's parking lot, and a coworker called for medical attention. The next day, Rylatt told Muttersbaugh that he had either heard or seen Muttersbaugh "flopping around like a fish out of water" either in an ambulance or on a stretcher. Muttersbaugh Declaration (doc. no. 31-3) at 3. Rylatt admitted that he heard about the incident in the parking lot but denied make derogatory comments about it. Furthermore, when Rylatt would see Muttersbaugh eating a meal or snack at his desk, Rylatt would criticize him for not working and tell him that he needed an assignment to be completed immediately. These interruptions forced Muttersbaugh to delay his meal or snack.

*Rylatt retaliated against Muttersbaugh, throughout his employment, for requesting reasonable accommodations and reporting Rylatt's discriminatory behavior.* Rylatt retaliated against Muttersbaugh in the following ways:

(1) Rylatt gave Muttersbaugh lower end-of-year performance reviews for the years 2010 and 2011.

(2) Rylatt told Muttersbaugh he was required to use vacation time for doctor's appointments, even though that is not Hyundai's policy.

(3) Rylatt subjected Muttersbaugh to heightened scrutiny.

(4) Rylatt expressed frustration with Muttersbaugh when he was away from his desk for 20 minutes due to having an insulin reaction.

(5) Rylatt reported false information to attempt to discipline Muttersbaugh.

(6) Rylatt expressed frustration with Muttersbaugh that he met with Hyundai's Human Resources and said he would not pay him overtime for the meeting.

(7) Rylatt told the individual, who was in charge of hiring Muttersbaugh in a different department, not to choose him.

(8)  Rylatt "forced" Bayless to discipline
      Muttersbaugh even when she found it
      inappropriate.

(9)  Rylatt's discriminatory animus led to
      Muttersbaugh's termination.

*Muttersbaugh's job duties changed and his request to remain on his original schedule was denied.* Beginning in early 2011, the Warranty Reclaim Group was informed that it had to perform additional duties, including driving and quality evaluations. This involved moving vehicles from one parking lot to another during Muttersbaugh's lunch hour. Muttersbaugh requested to eat during that time, but Rylatt said he had to move the cars.

In 2011, Muttersbaugh took his request for a regular lunch time to Human Resources at least twice. Human Resources told him he was required to follow Rylatt's instructions and made no further steps to interact with Muttersbaugh regarding the provision of reasonable accommodations. Missing lunch or eating

lunch significantly later than normal caused Muttersbaugh to experience insulin reactions.

*After Muttersbaugh was approved for time away from work under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., for his diabetes, Rylatt's efforts to discriminate and retaliate against Muttersbaugh intensified.* Bayless told Muttersbaugh that Rylatt was looking for ways to get rid of him and advised him to apply for FMLA leave to protect his diabetes-related absences. Rylatt's treatment of Muttersbaugh grew worse after he was approved for FMLA for his diabetes. Specifically, he interrupted Muttersbaugh's use of reasonable accommodations (such as stopping work to eat a snack at his desk to alleviate a diabetic event) on a weekly basis. On February 10, 2012, Muttersbaugh requested to break for lunch, but Rylatt denied this request and Muttersbaugh continued to work; as a result, he suffered a severe insulin reaction.

In February 2012, and as referenced above, Rylatt gave Muttersbaugh a negative performance review for the year 2011, causing Muttersbaugh to be put on a performance improvement plan and lose eligibility for a yearly raise.

Rylatt also complained about Muttersbaugh's use of reasonable accommodations. Theressa James, an Assistant Manager in the Quality Evaluation Department, overheard a conversation between Rylatt and Chris Susock, the Director of Quality, in which Rylatt complained about Muttersbaugh taking so many days of his FMLA for his diabetes. Specifically, she overheard Rylatt say that Muttersbaugh should be able to get his blood sugar in order and not take the entire day off, and that he was "going back to [Human Resources] to see what can be done." James Declaration (doc. no. 31-4) at 3. James felt the conversation was "completely inappropriate" and wrote an email to Robert Clevenger, Manager for the Team Relations Department, about the conversation. *Id.* at 2. James met with Clevenger and

10

Sheron Rose, Team Relations Director, to discuss the conversation and tell them that Rylatt had claimed he was changing time sheets.  Clevenger and Rose told James that they were investigating the incident.

*Rylatt thwarted Muttersbaugh's promotion.*  In December 2012, Muttersbaugh sought and received confirmation from Human Resources that he was eligible for a job transfer or promotion.  He interviewed for a position in a new department, but he was not chosen because Rylatt told the individual in charge of hiring not to choose him.

*Muttersbaugh was terminated for violating the Workplace Threats and Violence Policy and Serious Misconduct Policy.*  On the evening of January 29, 2013, Muttersbaugh had a blood-sugar event and, as a result, could not go to work on January 30.  He received permission to use FMLA for a diabetic event.  That day, Christina Blue, an employee, reported concerns about a conversation she had with Muttersbaugh on January 29 to Bayless that she had heard Muttersbaugh say that

everyone who works on the third floor of the administration building was not worth the air they breathe. When discussing drug screens, Muttersbaugh said he would curse at the person who administers drug tests if he was ever tested. Blue responded that, considering recent school shootings, he should not make comments like that. Muttersbaugh allegedly responded that he "wouldn't come in to shoot someone [he] had a disagreement against, [he] would just plant a bomb and tie it to the phone and call in to detonate." January 30, 2013 Memo from Bayless to Clevenger (doc. no. 27-10) at 2; Clevenger Declaration (doc. no. 27-1) at 5. According to a Team Relations Memo on the incident, another witness heard Muttersbaugh say "he would just walk in and shoot the person; he would place something like a device and then just phone the person." February 1, 2013 Team Relations Memo (doc. no. 27-11) at 2.

Robert Clevenger classified the incident as workplace violence and initiated an investigation in

which employees who had participated in the January 29 conversation were interviewed. Rylatt, who did not participate in the January 29 conversation, was interviewed but he does not remember what he said, and no notes were recorded from his interview. Bayless was not interviewed. Clevenger did not seek any opinions from supervisors about Blue's general character or her credibility.

On January 31, Muttersbaugh was escorted to the security office at work. Rylatt and Human Resources accused Muttersbaugh of threatening to plant explosives at Hyundai. He denied the accusations. At his deposition for this case, he further denied the accusations, but he did admit that he told an employee that people could get a bomb into Hyundai because security does not check backpacks. Hyundai suspended Muttersbaugh without pay. Muttersbaugh called Human Resources for an update following his suspension, and he was told that he was fired. On February 6, Human Resources sent Muttersbaugh a letter informing him of

the alleged reasons for termination, which included: (1) his comment "about potentially placing an explosive device at" Hyundai; and (2) "profane and hateful comments regarding other Team Members in a threatening and aggressive manner." Termination Letter (doc. no. 27-16) at 2.

Kelly Rucker, the head of the Workplace Violence Committee, relied on Team Relations to do a thorough investigation including looking at past disciplines and make recommendations. At his deposition, Rucker stated that, at the meeting with Team Relations, there were no discussions of Muttersbaugh's medical condition and that he did not have any knowledge about his medical condition. Rucker Deposition (doc. no. 27-15) at 20. Muttersbaugh stated that he had "no definitive proof" that Rylatt had anything to do with his termination. Muttersbaugh Deposition (doc. no. 27-4) at 52.

*Muttersbaugh filed an EEOC Charge on June 6, 2013.* His EEOC charge stated:

> "I was hired by the above named employer on May 3, 2010, as a Warranty Reclaim Specialist. I

have Type 1 diabetes, a disability that my employer was aware of. Because of my disability, I am required to eat meals frequently and regularly. I would remind my management staff that I needed to eat meals at specific times frequently, and was frequently denied by Mark Rylatt, the manager of Information. I complained to Sheron Rose, Human Resource Director about my unfair treatment from Mark Rylatt, and things became worse. I was retaliated against because of my complaint about my start times and finish times changing, which affected my eating schedule. On February 6, 2013 my employment was terminated by [Hyundai].

"I was terminated because I committed workplace violence, which I deny. [Hyundai] claims that I had been written up before for violence, which I also deny. [Hyundai] legal counsel Chris Whitehead claims that I had 'redness in the face, and my hands were shaking.' These are symptoms of low blood sugar, and had been explained to management. My direct supervisor Jennifer Bayless was aware of this, as a few days after the incident occurred, I had no recollection of the 'incident' and reminded her of my low blood sugar. She had witnessed a few insulin reactions at this point, and had assisted as necessary.

"There have been several other incidents that I have documentation related too. I believe I was discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended."

EEOC Charge (doc. no. 27-27) at 2.

15

### III. DISCUSSION

#### A. Failure-to-Accommodate Claim

The magistrate judge concluded that the failure-to-accommodate claim was untimely, and that, even if timely, it would not survive summary judgment because Muttersbaugh was not denied an accommodation. The court finds that the claim was not untimely, and that there are disputes of material fact as to when Muttersbaugh's supervisor prevented him from eating and whether any accommodation Muttersbaugh was provided was effective. Therefore, summary judgment is inappropriate.

   i. *The magistrate judge erred in concluding that Muttersbaugh's failure-to-accommodate claim is time-barred.*

Hyundai argued that Muttersbaugh's failure-to-accommodate claim is time-barred, and the magistrate judge agreed. The court disagrees and finds that the claim is timely.

A plaintiff raising a claim under Title I of the ADA must comply with the same procedural requirements articulated in Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117(a) (incorporating the procedures set forth in 42 U.S.C. § 2000e-5). As such, before filing suit in district court, the plaintiff must first file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1); *Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1317 (11th Cir. 2001). For an EEOC charge to be timely, it must be filed within 180 days of when the alleged violation occurred. *See* 42 U.S.C. § 2000e-5(e)(1). Once the EEOC dismisses the charge and notifies the plaintiff of his right to sue, the plaintiff has 90 days in which to file suit on his claim in district court. *See* 42 U.S.C. § 2000e-5(f)(1); *Santini v. Cleveland Clinic Florida,* 232 F.3d 823, 825 (11th Cir. 2000).

Muttersbaugh filed his charge on June 6, 2013; thus, any incidents occurring prior to December 8, 2012 (180 days before) are time-barred. Hyundai argued, and

the magistrate judge agreed, that, because Muttersbaugh pointed to discrete and severable events that all occurred before December 8, 2012, in his deposition and interrogatory responses, he was not denied reasonable accommodations after December 8, 2012. However, the fact that Muttersbaugh provided these dates does not foreclose the possibility that he was also denied accommodations at other times. Muttersbaugh stated in both his interrogatory responses and declaration that he was denied accommodations throughout his employment, not only before December 8, 2012. *See* Muttersbaugh Declaration (doc. no. 31-3) at 3; Muttersbaugh Responses to Hyundai Interrogatories (doc. no. 27-18) at 10-11. Thus, the court finds that there is a factual dispute as to whether Muttersbaugh's claim is time-barred.

ii. *The magistrate judge erred in concluding that summary judgment is appropriate, for disputes of material fact exist as to when Muttersbaugh's supervisor prevented him from eating and whether any accommodation Muttersbaugh was provided with was effective.*

There are disputed issues of fact on the merits, which preclude summary judgment: (1) whether Rylatt prevented Muttersbaugh from eating while moving cars or during other times in the day, and (2) whether such denials of food made his overall accommodation ineffective.

A disabled employee is entitled to a reasonable accommodation, and an ineffective accommodation is not an accommodation. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) ("It is the word 'accommodation,' not the word 'reasonable,' that conveys the need for effectiveness. An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations.")

The magistrate judge concluded that Muttersbaugh received an effective accommodation, including opportunities to obtain food during his work day, such as food from the vending machine at nearly any point in the day except for when he was moving cars. The magistrate judge also noted that, "Despite his

complaint he was not given a 'regular' lunch break, Muttersbaugh could take his lunch either before or after his driving duties were completed." Report and Recommendation (doc. no. 47) at 12. However, Muttersbaugh contends that: This conclusion "misunderstands the nature of Plaintiff's disability and accommodation needs. With a larger meal like lunch Plaintiff may have some flexibility as to when he eats, but with snacks (smaller meals), he may not. Sometimes even minutes-long delays in consuming appropriate food or beverages can have hours-long adverse effects. ... As a result, the delays Rylatt often imposed on Plaintiff's eating lunch and consuming snacks (separate from and in addition to when Muttersbaugh moved cars) effectively denied Plaintiff's access to and use of reasonable accommodations." Plaintiff's Objections (doc. no. 50) at 4.

Summary judgment is inappropriate at this stage because, with the record and reasonable inferences read in the light most favorable to Muttersbaugh, disputed

issues of material fact exist, including whether Rylatt prevented Muttersbaugh from eating while moving cars or during other times in the day, and whether such denials of food made his overall accommodation ineffective.

B.   Retaliatory Failure-to-Promote Claim

Muttersbaugh alleged that, around December 2012, he was not selected for a promotion because of his disability and his requests for accommodations.  He had applied for promotion to an Assistant Manager position in the Quality Evaluation Department.  He interviewed for the position and was told that he was the most qualified for the position but he was ultimately not chosen.   He was later told that Rylatt told the individual in charge of hiring him, Mark Radar, not to choose him.

A failure-to-promote claim may be brought under two theories with different legal tests:  (1) discriminatory failure to promote and (2) retaliatory failure to promote.  The magistrate judge applied the discriminatory failure-to-promote test, but

Muttersbaugh brought this claim under the retaliatory failure-to-promote theory. *See* Plaintiff's Response to Motion for Summary Judgment (doc. no. 32) at 47. In applying the discriminatory failure-to-promote test, the magistrate judge concluded that the failure-to-promote claim should be dismissed for two reasons: (1) Muttersbaugh failed to exhaust his administrative remedies; and (2) he failed to make out a prima-facie case.

Regarding the first reason, the magistrate judge erred in concluding that Muttersbaugh did not exhaust his administrative remedies. His retaliatory failure-to-promote claim fits squarely within his initial EEOC charge, which alleged retaliation.

With regard to the second reason, the magistrate erred in concluding that Muttersbaugh brought the failure-to-promote claim under a discriminatory theory, rather than a retaliatory theory. Nevertheless, applying the retaliatory failure-to-promote test, the court holds that summary judgment is appropriate on

this claim because Muttersbaugh failed to present evidence, beyond hearsay statements, that raised a specter of retaliation.

    i.   *The magistrate judge erred in concluding that Muttersbaugh did not exhaust his administrative remedies, for the failure-to-promote claim is like or related to, or growing out of the retaliation allegations contained in the EEOC charge.*

Muttersbaugh alleged in his EEOC charge that he engaged in statutorily protected activity by requesting accommodations and by complaining about discriminatory conduct. *See* EEOC Charge (doc. no. 27-27) at 2. In his charge, he stated that he was "retaliated against" and "There have been several other incidents that I have documentation related to[]." *Id.* Hyundai argued that Muttersbaugh did not exhaust his administrative remedies because he did not explicitly include the failure-to-promote claim as a basis for his retaliation claims in his charge. The magistrate judge erred in agreeing with Hyundai. A retaliatory failure-to-promote claim is a form of retaliation that

is like or related to Muttersbaugh's allegations of retaliation in his EEOC charge.

In order to make an ADA claim in federal district court, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *See Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018). Judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but allegations of new acts of discrimination are inappropriate. *See id.* However, a court should be extremely reluctant to allow procedural technicalities to bar claims brought under discrimination statutes. *See id.* Thus, to determine whether a plaintiff has exhausted his administrative remedies, the proper inquiry is whether the plaintiff's complaint is like or related to, or grew out of, the allegations contained in the EEOC charge. *See id.* at 1328.

Muttersbaugh exhausted his administrative remedies on the failure-to-promote claim because he stated that

he was retaliated against in his charge. His
retaliatory failure-to-promote claim is 'like or
related to' or 'grew out of' the retaliation claims
alleged in the EEOC charge. Thus, Hyundai's argument
is without merit, and the magistrate judge erred in
agreeing with it.

     ii. *Nevertheless, under a retaliatory failure-to-promote theory, Muttersbaugh's claim does not survive summary judgment.*

Muttersbaugh alleges that Rylatt retaliated against
him for engaging in statutorily protected conduct,
including requesting reasonable accommodations. As a
result of Rylatt retaliating against him, according to
Muttersbaugh, he was not promoted. Hyundai argues that
summary judgment should be granted on this claim
because Muttersbaugh failed to establish a causal
connection between his protected activities and being
denied a promotion. The court agrees that the evidence
presented is insufficient to survive summary judgment.

An employee may establish a prima-facie case of retaliation by showing that: (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *See Batson*, 897 F.3d at 1329. Muttersbaugh failed to establish a prime-facie case, specifically that there was a causal connection between his protected activities and being denied a promotion. Specifically, he alleges that he was told that he was the most qualified applicant for the job and that Rylatt told the decisionmaker, Mark Radar, not to hire him. Muttersbaugh argues that these facts, in combination with other evidence of Rylatt's discriminatory animus and retaliation, could be seen by a reasonable juror as supportive of retaliatory failure to promote.

The court finds that Muttersbaugh's claim fails because there is no evidence of causation. Specifically, he failed to present any evidence, beyond

inadmissible hearsay statements in his declaration, that Rylatt had any impact on the decision not to promote Muttersbaugh.

## C.   Retaliatory Termination Claim

Muttersbaugh argues that Rylatt retaliated against him for his request for and use of accommodations by setting into motion a series of events that led to his termination.  The magistrate judge recommended granting summary judgment on this claim because Muttersbaugh failed to refute Hyundai's legitimate, non-retaliatory reason for termination.  The court agrees.

Again, an employee may establish a prima-facie case of retaliation by showing that: (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *See Batson*, 897 F.3d at 1329.  Once an employee has established a prima-facie case of retaliation, the burden shifts to the employer to

articulate a legitimate reason for the adverse action. *See id.* If the employer meets this burden, the burden shifts back to the employee to demonstrate pretexr--that is, to present evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* The retaliatory-termination claim should be denied because Muttersbaugh has failed to sufficiently rebut Hyundai's legitimate reason for terminating him.

> i. *The magistrate judge properly concluded that Hyundai articulated a legitimate reason for terminating Muttersbaugh.*

The court will assume that Muttersbaugh established a prima facie case of retaliation. Hyundai must, therefore, articulate a legitimate reason for the challenged action. *See Chapman*, 229 F.3d at 1024. "However, the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is

sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.*

The magistrate judge properly concluded that Hyundai articulated a legitimate, non-retaliatory reason for terminating Muttersbaugh: he violated the Workplace Threats and Violence Policy, which is a legitimate, non-retaliatory reason for firing an employee.

Consistent with company procedures when dealing with potentially serious policy violations, Kelly Rucker, Hyundai's Senior Manager of Human Resources, reviewed the investigation findings along with a few other managers. The investigation included soliciting and reviewing three eye-witness accounts, which all supported the allegations. The court was not presented with any evidence suggesting that any of the eye witnesses had a motive to lie--in particular, a retaliatory one. After reviewing the investigation findings and Muttersbaugh's disciplinary history, as

well as having a discussion with other managers, Rucker determined that Muttersbaugh's actions violated Hyundai's Workplace Threats and Violence Policy. It is undisputed that other employees have been terminated for violating this policy. *See* Clevenger Declaration (doc. no. 27-1) at 7.

> ii. *The magistrate judge properly concluded that Muttersbaugh failed to cast sufficient doubt that Hyundai did not fire him for violating a workplace policy.*

Because Hyundai has articulated a legitimate reason for terminating Muttersbaugh, the burden shifts back to Muttersbaugh to present evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Hurlbert*, 439 F.3d at 1298. If Muttersbaugh fails to meet this burden, Hyundai is entitled to summary judgment. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997). At summary judgment, Muttersbaugh need not prove pretext; instead, he must only "cast sufficient

30

doubt" such that a jury could reasonably infer that Hyundai's "proffered legitimate reasons were not what actually motivated its conduct." *Batson*, 897 F.3d at 1331.

The court finds that Muttersbaugh failed to cast sufficient doubt on Hyundai's legitimate, non-retaliatory reason for firing him. Muttersbaugh's evidence of pretext, that is, his own denial of making the statements at issue, is insufficient. The evidence reflects three eye-witness accounts, and there is no evidence that Hyundai relied on these witnesses for improper reasons. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions--indeed the wisdom of them is irrelevant--as long as those decisions were not made with a discriminatory motive."). Thus, summary judgment is appropriate.

## D. Other-Assertions-of-Retaliation Claim

The magistrate judge properly concluded that Muttersbaugh's remaining assertions of retaliation were time-barred.


## E. Discriminatory Termination Claim

Muttersbaugh alleges that Rylatt was biased against him, based on his disability and related use of accommodations for his disability, and that Rylatt intentionally set into motion a chain of events that caused his termination. The magistrate judge recommended summary judgment on this claim, in part because Muttersbaugh did not make a sufficient showing of pretext to rebut Hyundai's legitimate, non-discriminatory reason for terminating him. The court agrees.

Assuming Muttersbaugh established a prima-facie case of discrimination, Hyundai must articulate a legitimate, non-discriminatory reason for the challenged action. *See Chapman,* 229 F.3d at 1024. If

Hyundai articulates one or more legitimate, non-discriminatory reasons for terminating the plaintiff, "the burden shifts back to the employee to demonstrate that the 'employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Batson*, 897 F.3d at 1329 (quoting *Martin*, 543 F.3d at 1268). If the employee does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment. *See Combs,* 106 F.3d at 1538.

The court finds that Hyundai had a legitimate, non-discriminatory reason to fire Muttersbaugh--that is, he violated Hyundai's Workplace Threats and Violence Policy. For the reasons discussed in the retaliatory-termination claim above, the court concludes that Muttersbaugh failed to sufficiently

rebut Hyundai's reason for terminating him with pretext.

***

Accordingly, for the above reasons, it is ORDERED as follows:

(1) Plaintiff Christopher Muttersbaugh's objections (doc. no. 50) are sustained as to his ADA accommodation claim and are overruled in all other respects.

(2) The recommendation of the magistrate judge (doc. no. 47) is rejected as to plaintiff Muttersbaugh's ADA accommodation claim and is adopted in all other respects.

(3) Defendant Hyundai Motor Manufacturing of Alabama, LLC's motion for summary judgment (doc. no. 25) is denied as to plaintiff Muttersbaugh's ADA accommodation claim and is granted in all other respects.

(4) Summary judgment is entered in favor of defendant Hyundai Motor Manufacturing of Alabama, LLC

on all of plaintiff Muttersbaugh's claims except his ADA accommodation claim.

(5) Plaintiff Muttersbaugh's ADA accommodation will go to trial.

DONE, this the 24th day of May, 2019.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE